IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS FRANCISCO SIMO NOBOA,
et al.,

    Plaintiffs,

    v.                                          CIVIL NO. 02-2730 (RLA)

IBERIA LINEAS AEREAS DE ESPAÑA,
et al.,

    Defendants.

### ORDER IN THE MATTER OF IBERIA'S WILLFUL MISCONDUCT

Plaintiffs in this case claim that defendant IBERIA LINEAS AEREAS DE ESPAÑA ("IBERIA") has incurred in willful misconduct and thus, it is not entitled to the Art. 25 limitation of liability provisions of the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* note following 49 U.S.C. § 40105 (the "Warsaw Convention").

### THE FACTS

Plaintiffs' mother, RAMONA A. NOBOA RUIZ, died in the Dominican Republic on November 24, 2001. Following her last wish to be cremated and buried next to her husband and inasmuch as there were no cremation services available in the Dominican Republic, her children made arrangements with a local funeral home to have her remains embalmed, prepare the necessary documents for transportation to Puerto Rico for cremation and have her ashes returned to the Dominican Republic for burial.

CIVIL NO. 02-2730 (RLA)                                    Page 2

---

The embalmed body was sent to Puerto Rico via American Airlines Cargo on November 27, 2001 consigned to Professional Mortuary Services. Upon arrival the remains were picked up by ANTONIO J. ABELLAS from Funeraria Belmar Memorial.

Once cremated, on December 1, 2001 MR. ABELLAS handed the box containing decedent's ashes to DAVID RODRIGUEZ-ESCOBAR, a PONCE CARGO representative at the Luis Muñoz Marin International Airport, who received the box on behalf of its principal, IBERIA, and issued the pertinent air waybill.  The air waybill noted that human remains (ashes) were being shipped. MR. RODRIGUEZ-ESCOBAR testified that the box was approximately 8 inches high and about 4 or 5 inches wide and that he placed a "fragile" label on it.

Thereafter, MR. RODRIGUEZ ESCOBAR delivered the box to JOSEF LAPESKER, ramp manager for SWISSPORT (now IVYPORT), who in turn handed it over to RAMON ALOMAR, of SWISSPORT. MR. ALOMAR testified in his deposition that he placed the box in Compartment No. 5 of an IBERIA Boeing 747 aircraft bound to the Dominican Republic. The ashes were lost and have never been found.

## WILLFUL MISCONDUCT

The Warsaw Convention governs the liability of air carriers involved in the international transportation of both passengers and cargo by establishing a body of applicable uniform rules. The Treaty includes a presumption of air carrier liability as well as a cap on

the liability for lost checked baggage or goods[1] unless the loss resulted from the carrier's "willful misconduct" "in accordance with the law of the court to which the case is submitted." Art. 25(1). Hence, we must examine defendant's conduct under Puerto Rico's legal precedent. *See*, Ins. Co. of N. Am. v. Fed. Exp. Corp., 189 F.3d 914, 919 (9th Cir. 1999) ("If a claim is permitted by the Convention, the analysis of the claim is then governed by the law of the forum"); In re Air Crash off Point Mugu, Calif., on January 30, 2000, 145 F. Supp.2d 1156, 1161 (N.D.Cal. 2001) ("All claims which are allowed by the Convention are then evaluated under the standards of the applicable domestic law."); D'Alessandro v. American Airlines, Inc., 139 F. Supp.2d 305, 307-08 (E.D.N.Y. 2001) ("law of forum jurisdiction, not an international standard of 'dol', determines what conduct constitutes wilful misconduct that deprives a carrier of limited liability protection").

The "willful misconduct" standard appearing in the official English translation of the Treaty derives from the term "dol" in the original French version of the Warsaw Convention. In Puerto Rico, following the Civil Law tradition influenced by French principles the concept is locally known as "dolo". It was interpreted by the Supreme Court in Canales v. Pan American World Airways, Inc., 112 D.P.R. 329, 340 (1982) as conduct requiring "malice" or "bad faith". According to Canales, there are two components to "dolo", i.e., the

---

[1]  Art. 22.

CIVIL NO. 02-2730 (RLA)                                          **Page 4**

"intellectual" aspect whereby a person is aware that a particular course of conduct is unsound and the "volitional" element whereby the person decides to follow that particular course of conduct. Further, inasmuch as good faith is presumed, it is plaintiff's burden to present sufficient evidence to establish the existence of "dolo".

> "Dolo" as we find it in the performance of obligations is the obligee's wilful and voluntary failure to comply with his obligation knowing that he is carrying out an unfair act.

Canals, 12 P.R. Offic. Transl. at 425.

### COMPARTMENT NO. 5

Plaintiffs argue that IBERIA is liable for willful misconduct in that it failed to establish a procedure for transportation of human ashes and that it even failed to follow the procedure applicable to the transfer of human remains. Specifically, they contend that IBERIA failed to give advance notice to the cargo personnel in the Dominican Republic that the ashes were on their way to ensure they were given deferential treatment, i.e., special measures taken to retrieve them immediately upon arrival.

According to the evidence on record, IBERIA had a procedure in place for the transportation of human remains in a coffin, diplomatic documents as well as valuable and perishable goods. This procedure consisted in placing a particular code in an operational telex sent to the point of destination prior to the aircraft taking off. The initials DIP were used for diplomatic cargo and HUM for human

**CIVIL NO. 02-2730 (RLA)**                                    **Page 5**

remains.  This telex allowed the agents at the receiving end to ensure these items were retrieved first.

In this particular case even though the air waybill prepared by MR. RODRIGUEZ-ESCOBAR, the PONCE CARGO representative who initially received the box from the funeral home, had a note describing the cargo as "HUMAN REMAINS (CENIZAS)"[2] the IBERIA agents in San Juan did not include any reference to the HUM code in the corresponding operational telex. By the time JESUS SANTOS RICHARDSON, IBERIA's Cargo Agent in Santo Domingo, reviewed the flight manifest and realized that human remains were being transported, Compartment No. 5 was empty. A search in the other cargo holds also proved futile.

According to plaintiffs, by failing to forward the notice in the advance operational telex, IBERIA "committed an intentional act knowing that it would probably result in injury because [it] acted with reckless disregard of the consequences of its actions." Motion Regarding Willful Misconduct (docket No. 57) p. 7.

Under the circumstances present in this case we find that not including the HUM code in the corresponding operational telex does not denote either a deliberate intention to cause damage or conscious awareness of its detrimental consequences on the part of IBERIA and/or its agents. JOSE A. TRAVERSO SOÑE, head of Cargo Sales for IBERIA in Santo Domingo, testified that there are no special code requirements regarding human ashes. Rather, the HUM code applies only

---

[2] The Spanish word "cenizas" translates into English as "ashes".

to human remains shipped in coffins pursuant to IATA regulations and is not applicable to human ashes transported after cremation. In addition, MR. TRAVERSO SOÑE testified that Compartment No. 5 is the safest one on board the aircraft, where important and valuable items are stored and is the first one opened upon arrival.

The facts in this case establish that the ashes in question were indeed placed in Compartment No. 5, the smallest compartment in the airplane. Also, it is the first one to be opened upon arrival and where valuable or otherwise special cargo such as diplomatic materials and jewelry are designated for transportation.

Plaintiffs claim there is an issue of fact as to whether, in fact, the box containing decedent's ashes was placed in Compartment No. 5 by relying solely on the testimony of LAPESKER who indicated in his deposition that it had "probably" been placed in either Compartment No. 3 or No. 4. However, not only was LAPESKER uncertain as to the specific compartment[3] but most importantly, he had no personal knowledge regarding its location. LAPESKER testified he turned over the box to ALOMAR who in turn placed it inside the aircraft. However, LAPESKER acknowledged that all he saw was ALOMAR

---

[3]   When asked in which compartment the ashes had been placed LAPESKER at page 15 of his deposition responded:

    A.   I am not sure if it was three or four.

    Q.   Three or four?

    A.   But probably, it was in one of those two. I am
         thinking it was three....

going inside the airplane with the box and coming out empty handed and thereafter the cargo door was locked. Thus, his testimony on this particular issue is inadmissible.

On the other hand, RODRIGUEZ-ESCOBAR testified that he had previously dealt with human ashes and that they were always placed in Compartment No. 5. He also stated that he had handed the box over to LAPESKER with specific instructions that it be placed in Compartment No. 5. Further, RAMON ALOMAR described how he personally placed the box inside the aircraft in Compartment No. 5 and that it was the last item to go inside the cargo area prior to departure.

In order for conduct to be regarded as constituting "dolo" it must be more than negligence. There must be a specific intent to do harm. In this particular case special care was given to the transportation of decedent's ashes by ensuring that they were placed in the same compartment as other valuable items which were being shipped. The fact that  notice was not given in the operational telex does not transform this omission into willful misconduct.

There is no evidence in this case showing "the wilful element, the intentional fault, or the awareness that a nonconforming act was being performed at the sender's considerable risk, accompanied by a reckless disregard of what could probably occur." Canals tr. 429

Plaintiffs' reliance on Predscot v. AMR, Inc., 383F.3d 861 (9th Cir. 2004) fares no better. The circumstances present in that case - dealing with a demand for decedent to relinquish her breathing device and medication despite specific warnings regarding her delicate

**CIVIL NO. 02-2730 (RLA)**                                            **Page 8**

health condition and dependence on them as well as the repeated
assurances that they would arrive in the next flight - have no
parallel to the facts present in the case before us.

### CONCLUSION

Based on the foregoing we find that[4] IBERIA is entitled to the
limitations provided in Art. 25 of the Warsaw Convention and that it
is liable to plaintiffs in the sum of **$736.00** in accordance with Art.
22 of the Warsaw Convention.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 22nd day of August, 2005.

                                     S/Raymond L. Acosta
                                    RAYMOND L. ACOSTA
                              United States District Judge

---

[4] *See,* plaintiffs' Motion Regarding Willful Misconduct of Iberia
Airlines (docket No. **57**); IBERIA's Reply (docket No. **67**); plaintiffs'
Motion Supplementing (docket No. **78**) and IBERIA's Reply (docket No.
**80**).